# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

HADDEN CLARK[1]　　　　　　　　　　*

Plaintiff　　　　　　　　　　　　　　　*

v　　　　　　　　　　　　　　　　　　*　　　Civil Action No. RDB-17-3403

WARDEN RICKY FOXWELL　　　　*

Defendant　　　　　　　　　　　　　　*

　　　　　　　　　　　　　　　　　　***

## MEMORANDUM OPINION

Plaintiff Hadden Clark, an inmate committed to the custody of Maryland's Division of Correction and confined at Eastern Correctional Institution (ECI) in Westover, Maryland, filed this civil rights suit alleging his right to freely practice his religion has been infringed. ECF 1. In response, Defendant Warden Ricky Foxwell filed a Motion to Dismiss or for Summary Judgment. ECF 18. Plaintiff opposes the motion. ECF 20. No hearing is necessary to determine the matters pending before the Court. *See* Local Rule 105.6 (D. Md. 2016). For the reasons that follow, Defendant's motion, construed as a Motion for Summary Judgment, shall be granted and Plaintiff's pending Motions for Appropriate Relief (ECF 21 and 23) shall be denied.

### Background

Plaintiff claims that following his transfer from Western Correctional Institution to ECI he was not permitted to receive Kosher meals which is required by his Jewish faith. He states that on a number of occasions items were missing from his meal tray and complains that he was provided with a vegetarian meal instead of a Kosher meal. He alleges he should not be provided a vegetarian meal as he does not follow a vegetarian diet. ECF 1-1 at pp. 1-2. He attaches to his complaint four administrative remedy procedure complaints (ARPs). ECF 1-1 at pp. 3-8. None of the ARPs include a response and three contain notations that they were dismissed for

---

[1]　　The Clerk shall correct the spelling of Plaintiff's last name on the docket.

procedural reasons. *Id.* In one of his ARPs, ECI-0966-17, Plaintiff claims that on April 12, 2017, he was told by Chaplain Khattak that Plaintiff is not Jewish and that is why he was not provided with a Kosher meal in observance of Passover. ECF 1-1 at p. 3.

On April 13, 2017, Plaintiff claims he was missing items from his lunch tray and when he asked the tier officer to call the kitchen, a message was relayed to him from Chaplain Khattak by Officer Holland. ECF 1-1 at p. 4. Plaintiff alleges that Khattak[2] told Holland that if Plaintiff did not like what the kitchen provides, Plaintiff should sign off of the Kosher diet. *Id.* Plaintiff states that this response violates the ECI handbook which assures he can practice the religion of his choice. *Id.*

On April 14, 2017, Plaintiff claimed in ARP ECI-0931-17 that he was not being allowed to celebrate Jewish holidays and therefore could not practice the religion of his choice. ECF 1-1 at p. 5.

On April 17, 2017, Plaintiff claims he did not get all of his food for lunch or dinner. ECF 1-1 at p. 2.

On April 18, 2017, Plaintiff claims he did not get all of his food, that the eggs were not cooked properly, and his tray did not have "Kosher tape" on it. *Id.*

On May 3, 3017, Plaintiff alleges he did not get all of his food. *Id.*

On May 7, 2017, Plaintiff claims that other inmates put feces in his food. *Id.*

On June 7, 2017, Plaintiff states that the dietary department at ECI tried to get him to sign off of the Kosher meal plan. *Id.* The following day, he claims he again did not receive all of his food. *Id.*

On October 18, 2017, Plaintiff complains that he was given vegetarian meals for breakfast, lunch, and dinner. *Id.* He claims that Sgt. Wilson called the dietary officer and

---

[2] The only named Defendant in the complaint is Warden Foxwell.

2

Wilson was informed that the Kosher meals are the same as the vegetarian meals. ECF 1-1 at pp. 2, 8.

On October 26, 2017, Plaintiff states he was told by Officer Holland that Kosher inmates get the same diet as vegetarian inmates. *Id.* at p. 2.

As relief, Plaintiff seeks to be reimbursed for the filing fee associated with this case and for compensatory damages against Warden Foxwell in the amount of 45 thousand dollars. ECF 1 at p. 3. Alternatively, Plaintiff seeks a transfer via the Interstate Corrections Compact (ICC) to New Hampshire. *Id.*

Defendant states that Plaintiff was transferred to ECI on January 13, 2017, and on January 29, 2017, requested to be placed on a Kosher diet. ECF 18 at Ex. 2. Plaintiff began receiving a Kosher diet on February 1, 2017. *Id.* at Ex. 2, Ex. 3.

Defendant explains that Kosher meals include fish and vegetarian food, but if there is no fish being served the meal is entirely vegetarian. ECF 18 at Ex. 2. He further states that there is no requirement for meat or fish to be included in a Kosher diet. *Id.*

For Passover, inmates on the Kosher meal plan receive a Seder plate on the first two nights of Passover. *Id.* Khattak arranged for ECI Jewish inmates to receive a Seder plate beginning April 10, 2017. *Id.* Plaintiff received a Seder plate. *Id.* There are no special meals provided for the Jewish holiday of Rosh Hashanah. *Id.*

Foxwell avers that he never gave orders or instructions to any employee at ECI that required interference with Plaintiff's receipt of Kosher meals, nor did he interfere himself. ECF 18 at Ex. 5. Khattak also avers he never interfered with Plaintiff's participation in Kosher meals and that the ECI Kosher Diet Attendance logs show Plaintiff received Kosher meals for every

3

meal on April 12 -14, 2017; April 17-18, 2017; May 3, 2017; June 8, 2017; and October 18 and 26, 2017. ECF 18 at Ex. 4, pp. 1-7.

## Plaintiff's Pending Motions

Plaintiff filed two Motions for Appropriate Relief (ECF 21, 23) seeking to consolidate this case with his other pending case, *Clark v. Foxwell*, Civil Action RDB-17-3404 (D. Md.). He explains he wants to establish to this Court that there is a pattern of harassment and disregard for his safety by correctional staff. He claims that the two cases should be "merged" because his legal materials are being confiscated and he has difficulty obtaining information from his prison base file. ECF 21, 23. The complaint in Civil Action RDB-17-3404 concerns Plaintiff's claim he has not been provided adequate access to medical care and the instant case concerns Plaintiff's free exercise of religion, but the Motions for Appropriate Relief raise claims of harassment and access to courts. As such, the motions raise new claims filed after dispositive motions were filed in each case. Pleadings in opposition to a dispositive motion are not the proper vehicles for amending a complaint or adding new claims; therefore, the motions shall be denied. *See Whitten v. Apria Healthcare Grp., Inc.*, No. PWG-14-3193, 2015 WL 2227928, at *7 (D. Md. May 11, 2015).

## Standard of Review

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an

4

> otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

## Analysis

### A. Exhaustion of Administrative Remedies

Defendant raises the affirmative defense that Plaintiff has failed to exhaust his administrative remedies for all the claims raised in the complaint. ECF 18. If one or more of Plaintiff's claims has not been properly presented through the administrative remedy procedure those claims must be dismissed pursuant to the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e. The PLRA provides in pertinent part that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

5

42 U.S.C. § 1997e(a).

For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see Chase v. Peay*, 286 F.Supp.2d 523, 528 (D. Md. 2003), *aff'd*, 98 Fed. Appx. 253 (4th Cir. 2004).

Notably, administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner. Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendants. *See Jones v. Bock*, 549 U.S. 199, 215-216 (2007); *Anderson v. XYZ Correctional Health Services, Inc.*, 407 F.2d 674, 682 (4th Cir. 2005). Nevertheless, a claim that has not been exhausted may not be considered by this court. *See Bock*, 549 U.S. at 220. In other words, exhaustion is mandatory. *Ross v. Blake*, __ U.S. __, 136 S.Ct. 1850, 1857 (2016). Therefore, a court ordinarily may not excuse a failure to exhaust. *Ross*, 136 S.Ct. at 1856 (citing *Miller v. French*, 530 U.S. 327, 337 (2000) (explaining"[t]he mandatory 'shall'. . . normally creates an obligation impervious to judicial discretion")).

Ordinarily, an inmate must follow the required procedural steps in order to exhaust his administrative remedies. *Moore v. Bennette*, 517 F.3d at 725, 729; *see Langford v. Couch*, 50 F.Supp. 2d 544, 548 (E.D. Va. 1999) ("[T]he. . . . PLRA amendment made clear that exhaustion is now mandatory."). Exhaustion requires completion of "the administrative review process in

accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006). This requirement is one of "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" *Woodford* 548 U.S. at 93 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (emphasis in original). But, the court is "obligated to ensure that any defects in [administrative] exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).

The Maryland Department of Public Safety and Correctional Services ("DPSCS") has an established "administrative remedy procedure" ("ARP") for use by Maryland State prisoners for "inmate complaint resolution." *See generally* Md. Code Ann. (2008 Repl. Vol.), Corr. Servs. ("C.S."), §§ 10-201 *et seq.*; Md. Code Regs. ("COMAR") 12.02.28.02(1) (defining ARP). The grievance procedure applies to the submission of "grievance[s] against . . . official[s] or employee[s] of the Division of Correction." C.S. § 10-206(a).

Regulations promulgated by DPSCS concerning the administrative remedy procedure define a "grievance" to include a "complaint of any individual in the custody of the [DOC] against any officials or employees of the [DOC] arising from the circumstances of custody or confinement." COMAR 12.07.01.01(B)(7). An inmate must "properly exhaust" the ARP process as a condition precedent to further review of the inmate's grievance. *See* COMAR 12.07.01.02(D); *see also.* C.S. § 10-206(b).

To pursue a grievance, a prisoner confined in a Maryland prison may file a grievance with the Inmate Grievance Office ("IGO") against any DOC official or employee. C.S. § 10-206(a). However, if the prison has a grievance procedure that is approved by the IGO, the

7

prisoner must first follow the institutional ARP process, before filing a grievance with the IGO. *See* C.S. § 10-206(b). There is an established administrative remedy procedure process that applies to all Maryland prisons. COMAR 12.02.28.01 *et seq*. Therefore when the ARP process provides a possible remedy, it must be followed and completed before an inmate may file a grievance with the IGO.

The ARP process consists of multiple steps. For the first step, a prisoner is required to file his initial ARP with his facility's "managing official" COMAR 12.02.28.02(D)(1), which is defined by COMAR 12.02.28.02(B)(14) as "the warden or other individual responsible for management of the correctional facility" and defined under C.S. § 1-101(k) "as the administrator, director, warden, superintendent, sheriff, or other individual responsible for the management of a correctional facility." Moreover, the ARP request must be filed within 30 days of the date on which the incident occurred, or within 30 days of the date the prisoner first gained knowledge of the incident or injury giving rise to the complaint, whichever is later. COMAR 12.02.28.09(B).

The second step in the ARP process occurs if the managing official denies a prisoner's initial ARP or fails to respond to the ARP within the established time frame. The prisoner has 30 days to file an appeal to the Commissioner of Corrections. COMAR 12.02.28.14(B)(5).

If the Commissioner of Correction denies an appeal, the prisoner has 30 days to file a grievance with the IGO.[3] COMAR 12.02.28.18; C.S. § 10-206(a); COMAR 12.07.01.05(B). When filing with the IGO, a prisoner is required to include copies of the following: the initial request for administrative remedy, the warden's response to that request, a copy of the ARP appeal filed with the Commissioner of Correction, and a copy of the Commissioner's response. COMAR 12.07.01.04(B)(9)(a). If the grievance is determined to be "wholly lacking in merit on

---

[3] If the Commissioner fails to respond, the grievant shall file their appeal within 30 days of the date the response was due. COMAR 12.07.01.05(B)(2).

8

its face," the IGO may dismiss it without a hearing." C.S. § 10-207(b)(1); *see also* COMAR 12.07.01.06(B). An order of dismissal constitutes the final decision of the Secretary of DPSCS for purposes of judicial review. C.S. § 10-207(b)(2)(ii). However, if a hearing is deemed necessary by the IGO, the hearing is conducted by an administrative law judge with the Maryland Office of Administrative Hearings. *See* C.S. § 10-208; COMAR 12.07.01.07-.08. The conduct of such hearings is governed by statute. *See* C.S. § 10-208; COMAR 12.07.01.07(D); *see also* Md. Code Ann., State Gov't § 10-206(a)(1)

Defendant asserts that the only claim Plaintiff properly exhausted is the one presented in ARP ECI-0931-17 in which Plaintiff claimed: "I'm a Jewish inmate. I request a transfer; ICC to New Hampshire or Maine since the Dept. of Corrections in Maryland won't let me celebrate my Jewish holidays and practice my religion." ECF 1-1 at p. 5. This ARP was filed on April 14, 2017, and following its dismissal, Plaintiff appealed the response to the Commissioner of Correction and to the IGO. ECF 18 at Ex. 7, pp. 1-2. Thus, Defendant asserts that any other claim presented in the complaint must be dismissed as unexhausted. Plaintiff does not offer any evidence to rebut the affirmative defense asserted by Defendant. ECF 20.

**B.      Respondeat Superior**

As noted, the only Defendant named in the complaint is Warden Foxwell. Plaintiff makes clear in his Opposition Response that he seeks to hold Foxwell liable on a *respondeat superior* theory of liability. ECF 20 at p. 3. He states that Foxwell "meaningfully considered and therefrom (sic) addressed the numerous complaint[s] relative to Khattak" and complaints regarding Kosher meals served to those housed on protective custody. *Id.* It is well established that the doctrine of respondeat superior does not apply in § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983); *see*

9

*also Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001) (no respondeat superior liability in a Bivens suit). Liability of supervisory officials "is not based on ordinary principles of respondeat superior, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). Supervisory liability under § 1983 must be supported with evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). There are no specific allegations against Foxwell in the complaint that indicate he participated in any conduct in connection with denying Plaintiff Kosher meals or otherwise not permitting him to observe his chosen religion.

## C. First Amendment Claim

Even if Plaintiff had named individuals whom he claims denied him Kosher meals, the complaint fails. "Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *O'lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). With respect to the free exercise of religion, prison inmates retain a right to reasonable opportunities for free exercise of religious beliefs without concern for the possibility of punishment. *See Cruz v. Beto*, 405 U.S. 319, 322 (1972) (per curiam). That retained right is not unfettered. Prison restrictions that

impact on the free exercise of religion but are related to legitimate penological objectives do not run afoul of the constitution. *See Turner v. Safely*, 482 U.S. 78, 89-91 (1987). The test to determine if the restrictions are justified requires examination of whether there is a rational relation between the asserted governmental interest and the regulation in question. In addition, this Court must examine: whether there are alternative means of exercising the right asserted; whether accommodation of the right will impact on the orderly operations of the prison; and whether readily available alternatives to the regulation would be less restrictive.

An additional consideration in this case is the standard provided by the Religious Land Use and Institutionalized Persons Act (RLUIPA). The act provides in part that:

> [n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ... even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person-(1) is in furtherance of a compelling government interest; and (2) is the least restrictive means of furthering that compelling government interest.

42 U.S.C. § 2000cc-1(a) (2000). A substantial burden is one that "put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Thomas v. Review Bd. of Ind. Employment Sec. Div.*, 450 U.S. 707, 718 (1981). Failure to accommodate religious dietary needs, when that failure is the result of intentional conduct, constitutes a substantial burden on the free practice of religion under the First Amendment's free exercise clause and RLUIPA. *See Lovelace v. Lee*, 472 F.3d 174, 201 (4th Cir. 2006) ("negligent acts by officials causing unintended denials of religious rights do not violate the Free Exercise Clause.").

Plaintiff in the instant case admits he was a participant in the Kosher meal plan and does not allege that he was altogether prohibited from doing so. Rather, his complaint is that his food tray was served to him with certain items of food missing and that he was given vegetarian meals when he is not vegetarian. He does not allege that the food served to him was religiously

11

objectionable. To the extent he claims he was told he could not participate in the Kosher meal plan because he is not Jewish, the allegation is a distinction without a difference given that he was never removed from the list to receive Kosher meals. Assuming he was not provided a Seder meal as he claims, the intermittent failure to provide him with a religious diet is not a substantial burden on his free exercise of religion.

**D.     Eighth Amendment Claim**

Defendant addresses Plaintiff's claim that feces was placed in his food on one occasion as an Eighth Amendment conditions claim. ECF 18. In response, Plaintiff states that the claim has to do with the fact that the notoriety of his crime has made him a target for violence by other inmates and, as a result, he is assigned to protective custody at ECI. ECF 20. Plaintiff states that the failure to prevent someone from tampering with his food is significant given the heightened need for protection he requires. *Id.* This claim, however, is unexhausted and must be dismissed without prejudice. Further, there is no allegation that Warden Foxwell knew about the food-tampering and failed to prevent it, or that it was anything more than one isolated incident. "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

**Conclusion**

Defendant Warden Foxwell is entitled to summary judgment in his favor on the free practice of religion claim. All other claims are dismissed without prejudice for failing to properly exhaust administrative remedies. A separate Order GRANTING summary judgment,

12

DISMISSING without prejudice unexhausted claims, and DENYING Plaintiff's Motions for Appropriate Relief follows.

_November 1, 2018_
Date

_Richard D. Bennett_
RICHARD D. BENNETT
UNITED STATES DISTRICT JUDGE